UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| RAYMUNDO CAMARILLO, RAMON MENDOZA, and SAMUEL RAMOS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:05-CV-455 PS |
| GEORGE PABEY, individually and in his official capacity as Mayor, and the CITY OF EAST CHICAGO, INDIANA, a a municipal corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

In December 2005, Plaintiffs Raymundo Camarillo, Ramon Mendoza, and Samuel Ramos filed this Complaint in the Superior Court of Lake County, Indiana alleging violations of 42 U.S.C. §§ 1983 and 1988 and seeking a declaratory judgment and an injunction returning them to their jobs. The Complaint asserts that Defendants the City of East Chicago and its mayor, George Pabey, unlawfully terminated Plaintiffs' employment with the City because of Plaintiffs' political support for the previous mayor. The case was removed to this Court and after a little more than a year of litigation Defendants moved for summary judgment [DE55]. Rather than respond to that motion, Plaintiffs moved to dismiss the case pursuant to Federal Rule of Civil Procedure 41(a) [DE60]. On May 22, 2007, this Court granted Plaintiffs' motion and dismissed the case, but reserved decision with respect to the allocation of costs [DE64].

Now before the Court are Defendants' Bill of Costs [DE65] and Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1927 [DE67] ("Sanctions Motion"). For the following reasons, the

1

Bill is granted and the Motion for Sanctions is denied.

## BACKGROUND

As the parties are familiar with the history that led to this litigation, the Court will dispense with a detailed account of the factual allegations.  It suffices to say that this is one of several cases pending against the Defendants in this district alleging improper employment practices after Pabey's rise to the Mayorship.  Most, if not all, of these cases involve the same counsel on both sides, including Plaintiffs' counsel here:  Attorney Anthony DeBonis, Jr. of Smith & DeBonis, LLC.

The filings currently before the Court began 14 days after this Court entered its dismissal order.  First, Defendants filed their Bill of Costs [DE 65], Memorandum in Support of Defendants' Bill of Costs [DE66] ("Costs Brief"), Sanctions Motion [DE 67], and memorandum of law in support thereof [DE68] ("Sanctions Brief").  Plaintiffs responded to the Bill of Costs on June 14.  (*See* Pls.' Mem. in Opp'n to Taxation of Costs [DE70] ("Costs Response").)  Defendants then filed their Motion for Leave to Supplement their Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1927 [DE72] ("Motion to Supplement"), seeking to expand the fees sought to include all but a few of the fees generated since the filing of the Complaint.[1]  Plaintiffs filed their response to the Sanctions Motion on July 6.  (*See* Pls.' Mem. in Opp'n to Mot. for Attorneys' fees [DE75] ("Sanctions Response").)  Defendants then filed a reply, but only with respect to the Sanctions Motion.  (*See* Defs.' Reply Mem. of Law in Supp. of their Mot. for Attorneys' Fees Pursuant to 28 U.S.C. § 1927 [DE78] ("Reply").)

---

[1]Magistrate Judge Rodovich granted Defendants' Motion to Supplement on June 22, 2007. (*See* Order [DE74].)

**DISCUSSION**

In essence, the dispute boils down to this: (1) Defendants seek their costs, which are typically granted as a matter of course, while Plaintiffs claim that their near-indigent status and Defendants' alleged misconduct should preclude an award of costs; and (2) Defendants seek to sanction Attorney DeBonis under 28 U.S.C. § 1927 because, they argue, his conduct in filing and pursuing this case was unreasonable and vexatious, a claim which DeBonis denies. This Court will address these issues in turn.

**I.    BILL OF COSTS**

Defendants' timely-filed Bill of Costs seeks reimbursement for court reporter and deposition transcription fees and for photocopying expenses during discovery. The request totals $4,408.71. Those costs break down as follows:

      Court Reporter and Deposition Fees      $3,807.57

      Photocopy Expenses      $601.14

Federal Rule of Civil Procedure 54(d)(1) governs the award of costs. Costs other than attorneys' fees are allowed as a matter of course to the prevailing party unless the Court directs otherwise. Fed. R. Civ. Pro. 54(d)(1). "[V]oluntary dismissal with prejudice renders the opposing party a 'prevailing party' within the meaning of Rule 54." *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003). However, Rule 54(d) allows a party to recover only those costs listed in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987); *Winniczek v. Nagelberg*, 400 F.3d 503, 504 (7th Cir. 2005). These costs include:

>   (1) Fees of the clerk and marshal;
>
>   (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

3

>    (3) Fees and disbursements for printing and witnesses;
>
>    (4) Fees for exemplification and copies of papers necessarily
>    obtained for use in the case;
>
>    (5) Docket fees . . . ;
>
>    (6) Compensation of court appointed experts . . . .

28 U.S.C. § 1920. While the district court has wide discretion in awarding costs, Rule 54(d)(1) creates "a strong presumption that the prevailing party will recover [the statutorily authorized] costs." *Mother & Father*, 338 F.3d at 708. *See also Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005) (holding that "[t]here is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate"). Moreover, the presumptive rule is joint and severable liability among the parties when distributing costs among multiple parties, "unless it is clear that one or more of the losing parties is responsible for a disproportionate share of the costs." *Anderson v. Griffin*, 397 F.3d 515, 522-23 (7th Cir. 2005). In awarding costs, the Court must first decide whether the requested costs are allowed under § 1920 and then decide whether the facts warrant the exercise of the Court's discretion.

### A.     Whether The Costs Fall Within § 1920

Before assessing costs, the court must determine (1) "that the expenses are allowable cost items," and (2) "that the amounts are reasonable and necessary." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991). The costs sought here are allowable under items (2) and (4) in §1920, but the Court must still find that they were reasonable and necessary. That determination provides the Court with some discretion in

4

awarding costs, but the "discretion is 'narrowly defined' because of the strong presumption created by Rule 54(d)(1) that the prevailing party will recover costs." *Contreras v. City of Chi.*, 119 F.3d 1286, 1295 (7th Cir. 1997).  For the reasons given below, the Court finds that all of the costs requested are reasonable and necessary.

Defendants request $3,807.57 for costs associated with the taking, transcription and delivery of depositions for this case.  (*See* Costs Brief at 4.)  Defendants seek the full costs for the depositions of the three Plaintiffs and a proportionate cost for 32 other witness whose depositions were apparently also relevant to some of the other cases against these Defendants. (*Id.*)  Plaintiffs do not object to the costs associated with the Plaintiffs' depositions, but object to the others on two grounds:  (1) that they were unnecessary because they were not cited in Defendants' motion for summary judgment and therefore they must not have been necessary for this case but rather were primarily to defend the other cases; and (2) that the apportionment is improper because it is based upon the captions associated with the depositions.  (*See* Costs Response at 7-8.)  With respect to the first issue, because of the uncertainty of victory on summary judgment, parties have an incentive to hold down deposition costs and therefore the Court need not undertake a painstaking review of the propriety of the depositions.  *See Anderson*, 397 F.3d at 522.  Furthermore, the question is whether "the deposition was necessary when taken."  *Finchum v. Ford Motor Co.*, 57 F3.d 526, 534 (7th Cir. 1995).  Plaintiffs do not assert that these depositions were unnecessary when they were taken; just that they were not cited in the summary judgment motion.  However, because the summary judgment briefing was never completed (because Plaintiffs sought dismissal rather than respond), the Court sees no reason to presume that these depositions were not necessary when taken.  With respect to the

5

division of costs associated with the 32 depositions, the Court finds the Defendants' division to be reasonable. Defendants have categorized the depositions by the particular plaintiff designation chosen by the Plaintiffs' attorney (*i.e.*, one witness' deposition may be designated for multiple cases with separate plaintiffs) and then dividing the costs for the particular deposition by the total number of plaintiffs designated. (*See* Costs Brief, Ex. 1(B).) This method is reasonable and Plaintiffs offer no alternative other than citations in filings.[2] As noted above, the citation method does not work as not all of the depositions deemed necessary at the time they were taken will ultimately be cited. Thus, the Court finds that these cost are authorized under § 1920, and that they were reasonable and necessary to the defense of this case.

Defendants also request $601.14 for photocopies of documents produced in response to Plaintiff's discovery requests. (Costs Brief at 6-7.) As with the depositions, Plaintiffs claim that these costs are not properly distributed among the various cases for which they were necessary. (*See* Costs Response at 7-8.) For the same reasons discussed above, the Court finds that these costs are authorized by § 1920, and that they were necessary to the litigation. In addition, the Court finds that the charges incurred, $.12 and $.15 per page, were comparable to the market and therefore reasonable.

---

[2] One concern the Court has with this method would be that, if Defendants seek the full costs associated with the depositions for the particular plaintiffs in each case and then a proportionate share for the 32 witnesses, then there may be a windfall if any of the 32 are plaintiffs in another case for which Defendants later seek recovery in full. A review of Exhibit 1(B), however, shows that this is not the case here. Only one name appears to be both a plaintiff and among the 32, Michael Lopez. (*Compare* Costs Brief, Ex. 1(B) *with Lopez v. Pabey*, no. 2:05 cv 453 PPS.) But these are not the same person: the witness is Michael G. Lopez and the plaintiff is Michael E. Lopez. The Court does not see any other potential windfall in Plaintiffs' methodology.

### B.      Discretionary Denial Of Costs

There are two recognized situations warranting a denial of costs in the Seventh Circuit: (1) "misconduct of the party seeking costs," and (2) "a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent." *Mother & Father*, 338 F.3d at 708. Plaintiffs assert that this case contains both situations. (*See* Costs Response at 3-7.) In addition, Plaintiffs argue for a change in the law to allow for a denial of costs where the party against whom costs are sought acted in good faith; essentially bringing a sanction of attorneys' fees and Rule 54 in line with each other. (*See id.* at 8-10.) None of these positions are persuasive.

#### 1.      Defendants' alleged misconduct

Plaintiffs assert that Defendants should be denied costs in this case because they delayed the disposition of this case by seeking the disqualification of Attorney DeBonis and by withholding records that Defendants were ultimately ordered to produce. (Costs Response at 5-6 (citing *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988)).) *Touche, Ross* notes that costs may be withheld "where [there is] misconduct by the prevailing party worthy of a penalty (for example, calling unnecessary witnesses, raising unnecessary issues, or otherwise prolonging proceedings)." 854 F.2d at 222 (parenthetical in original). But that case also notes that "unless and until the losing party affirmatively shows that the prevailing party is not entitled to costs, the district court must award them as of course." *Id.* (quotation marks omitted). Plaintiffs have not made such a showing here. First, it is difficult to find that a party who voluntarily dismissed its case with prejudice can later deny costs because the other party unnecessarily prolonged the proceedings. Second, the Court does not believe the Defendants unnecessarily prolonged this case. In all, it was a little

7

more than a year from the time of the Complaint to Defendants' motion for summary judgment. Based on that time frame, it does not appear to the Court that Defendants dragged their feet. Third, even if the Defendants did drag their feet, Plaintiffs do not claim that the costs they seek are related to that delay. While *Touche, Ross* does not suggest that a relationship is required, the Court might be more inclined to use its discretion if that were the case. But it is not. Therefore, the Court will not use its discretion to deny costs based on the Defendants' conduct in this case.

### 2.     Plaintiffs' ability to pay

Although Plaintiffs admit they are not indigent, they nevertheless claim that the Court should spare them from having to pay Defendants' costs because of their financial situation. (*See* Costs Response at 3-5.) While acknowledging that they "are not persons in abject poverty," Plaintiffs argue that "[i]mposing [costs] upon them would have the effect of wiping out a substantial portion of their income for a significant period of time thereby rendering them destitute." (*Id*. at 4.) The Costs Response notes that, "as of the time of his deposition on June 30, 2006," Plaintiff Reymundo Camarillo was unemployed except for a few odd jobs and a part-time job at a car wash. (*Id*. at 3-4.) It also notes that Camarillo filed for bankruptcy in March 2006, and has depleted his retirement benefits. (*Id*. at 4.) With respect to Plaintiff Samuel Ramos, it states that he has an income of approximately $2,000 per month; while Plaintiff Ramon Mendoza also has approximately $2,000 per month in income, from which he supports his wife and granddaughter. (*Id*.) In addition, it notes that Mendoza filed for bankruptcy in 2004. (*Id*.)

"[I]ndigence is not a blanket excuse for paying costs." *Rivera v. City of Chi.*, 469 F.3d 631, 635 (7th Cir. 2006). In fact, the exception is a narrow one. It requires a factual finding by

8

the district court that the losing party is "incapable of paying the court-imposed costs at this time or in the future." *Id*. (quotation marks omitted).  The burden is on the losing party to provide the district court with sufficient documentation to support such a finding; including, but not limited to, "evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses."  *Id*.  In addition, "the district court should consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case when using its discretion to deny costs."  *Id*.

      With these considerations in mind, a decision to deny costs is not warranted.  First, Plaintiffs themselves expressly deny that they are indigent.  (Costs Response at 3. ("The Plaintiffs in this case are not indigent, but close to it.")  Second, Plaintiffs do not point to sufficient evidence of current or future inability to pay.  Indeed, although the Costs Response discusses the Plaintiffs' income, it is devoid of a listing of Plaintiffs' monthly expenses.  Plaintiffs only point to their depositions as evidence of indigence; and they show neither present, nor future indigence.  Furthermore, the only Plaintiff that does not claim to have more than $2,000 in monthly income is Camarillo, but despite the Costs Response being filed in June of 2007, it only points to evidence as of Camarillo's June 2006 deposition.  That is not proof of current or future indigence.  Plaintiffs have simply not provided this Court with a sufficient basis to find that they are now incapable of paying costs now, and that they will be in the future as well.  *See Rivera*, 469 F.3d at 636-37.  Third, the amount of costs does not favor a denial based on indigence.  Although Plaintiff is correct that $4,400 is no small amount to the average person, it is not exorbitant for three depositions, portions of others, and document production in this case.  *See McGill v. Faulkner*, 18 F.3d 456 (7th Cir. 1994) (imposing over $3,000 in costs on a

9

state prisoner, despite an inmate account averaging $75 a month and the district court's finding that he was indigent; and noting that "non-indigent litigants must consider the relative merits of their lawsuit against the pain an unsuccessful suit might inflict on their pocketbook").  While this amount might conceivably have, as Plaintiffs suggest, a "chilling effect" on aggrieved persons filing suits, (Costs Response at 5), that is a policy dispute Plaintiffs have with the strong presumption in favor of costs embodied in Rule 54; it is not an issue for this Court.  Fourth, although the Court believes the Plaintiffs acted in good faith, that alone does not counsel a denial of costs.  Finally, as is clear from Plaintiffs' voluntary dismissal, the issues in this case were not particularly close.  Considering the strong presumption in favor of an award of costs, Plaintiffs' circumstances, and the amount of costs to be imposed, a denial of costs based on indigence is not warranted.

### 3.     Plaintiffs' good faith

The last argument Plaintiffs make against imposing costs is that this is a good-faith civil rights case and the awarding of costs here would have a chilling effect on such suits.  (*See* Costs Response at 8-10.)  While this is already a factor in the Court's exercise of its discretion, *see Rivera*, 469 F.3d at 635, Plaintiffs argue for an extension of the law to provide that costs, like attorneys' fees, should not be awarded against a party where that party has filed their suit in good faith.  (*Id*.)  Plaintiffs' proposed extension ignores the significant differences between attorneys' fees and costs.  Attorneys' fees are generally awarded as a sanction under Rule 11 or under 28 U.S.C. § 1927 against a party acting in bad faith.  That is why good faith generally bars such sanctions.  On the other hand, Rule 54(d) allows for the award of costs "as of course."  Fed. R. Civ. Pro. 54(d)(1).  Plaintiffs' beef is with the policy decision embodied by the Rule; but it is a

10

rule that this Court is obliged to follow.  Regardless, controlling precedent also prevents this Court from equating the sanction of attorneys' fees with the award of costs.  *See Mother & Father*, 338 F.3d at 710 (noting that "[a]ttorneys' fees stand on a different footing [than the award of costs] because there is no parallel rule either in Rule 54 or elsewhere creating any presumption of entitlement to such fees").  The Court, therefore, declines Plaintiffs' invitation to change the law.

Defendants' Bill of Costs seeks costs recoverable under Rule 54(d) and under 28 U.S.C. § 1920.  Those costs are reasonable, necessary, and fairly apportioned.  Moreover, Defendants' conduct does not warrant denial of the award, and Plaintiffs have not given this Court a sufficient basis to find that they should be spared the award to due indigence.  Thus, the Court grants Defendants' Bill of Costs.

## II.     ATTORNEYS' FEES

Defendants argue that DeBonis should be sanctioned because, according to them, he knew from the outset that this case did not have a factual basis.  (*See* Sanctions Brief at 5-6.)  In particular, they contend that because the Plaintiffs themselves could not provide the factual support for their claim, he should have known not to file the suit from a simple interview.  (*Id*.)  Furthermore, Defendants argue that this lack of evidence should have become more striking to DeBonis as discovery progressed and the claims did not find further support.  (*Id*. at 6.)  Defendants initially claimed that DeBonis' allegedly sanctionable conduct only justified an award of attorneys fees associated with Defendants' motion for summary judgment.  (*Id*. at 9-10.)  However, with no justification beyond "further reflection," Defendants later decided to expand the scope of their request to include almost all fees associated with the case from the

11

Complaint on.  (*See* Motion to Supplement.)

    **A.    Waiver**

As an initial matter, Plaintiffs assert that Defendants waived their right to seek attorneys fees by waiting until after the case had been dismissed.  (*See* Sanctions Response at 4.)  Essentially, Plaintiffs contend that, because the Defendants argue that this case was groundless from the beginning, then the clock started ticking on the period to seek sanctions immediately upon receipt of the Complaint, or at a minimum at the close of discovery.  (*Id*. at 4-5.)  The Court agrees that Defendants' decision to seek *all* fees generated since the inception of this case – as opposed to those arising out of the motion for summary judgment as in their initial request – seems inconsistent with the clock starting at any other time.  This is especially so given the absence of any justification for late decision to expand the request to include all fees, other than that counsel had time for "further reflection."  (*See* Motion to Supplement at 1.)

Defendants did not waive their right in this case.  Defendants filed their motion a mere 14 days after this Court's Order granting the Motion to Dismiss.  They filed their motion to supplement shortly thereafter.  Section 1927 motions are not governed by the 14 day time limit in Rule 54, but rather must be made "as soon as practicable after the discovery of a violation."  *See XCO Int'l Inc. v. Pac. Scientific Co.*, No. 01 C 6851, 2003 WL 2006595, at *5 (N.D. Ill. Apr. 29, 2003).  While Defendants may have always thought that the case was baseless, the accuracy of that perception was not truly tested until Plaintiffs had to respond to the motion for summary judgment.  When Plaintiffs chose to back down rather than respond to Defendants' motion, only then were Defendants' suspicions confirmed.  At least in this case, the Court will not fault Defendants for refraining from requesting sanctions until after it became clear that Plaintiffs did

12

not have anything up their sleeve.  Therefore, the Court does not believe Defendants have waived their right to seek sanctions.

   **B.**  **Sanctions**

   Under 28 U.S.C. § 1927, any attorney who "multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees incurred because of such conduct."  28 U.S.C. § 1927.  Such sanctions are to be awarded solely to in the discretion of the court.  *See Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988).  As is plain from the statute, § 1927 sanctions require that the sanctioned party have acted both "unreasonably and vexatiously." *Moriarty v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005).  However, unlike sanctions under Rule 11, § 1927 does not require an attorney to conduct a "reasonable investigation."  *Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir. 1990) (quotation marks omitted).

   The Seventh Circuit has held that "either subjective or objective bad faith is a prerequisite for awarding [§ 1927] sanctions."  *Dal Pozzo v. Basic Mach. Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006).  Despite their recitation of Attorney DeBonis' background, (*see* Sanctions Brief at 1-5), Defendants do not assert that Attorney DeBonis was motivated by bad faith, *i.e.*, malice or ill-will.  Instead, they seek sanctions claiming objective bad faith.  Objective bad faith can be demonstrated by a showing of "reckless indifference to the law," such as where "a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound."  *Id*. (quotation marks and citations omitted).  *See also The Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).  Extraordinary or extreme negligence may also constitute bad faith.  *Kotsilieris v. Chalmers*, 966 F.2d 1181 (7th Cir. 1992).

13

Thus, where counsel acts recklessly, raises baseless claims despite notice of their frivolous nature, or "otherwise show[s] indifference to statutes, rules, or court orders," sanctions may be warranted. *See Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005). The key component of the inquiry is "the objective unreasonableness of the attorney's actions." *Id*. But the "attorney's actions must generally be so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Fahey v. Creo Prods., Inc.*, No. 86 C 5709, 1998 WL 474114, at *4 (N.D. Ill. Aug. 4, 1998).

Importantly for this case, the Seventh Circuit interprets § 1927 "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable." *The Jolly Group*, 435 F.3d at 720 (citing *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201 n. 6 (7th Cir. 1990)).

In ruling on the merits of a § 1927 motion, a court generally must answer two questions: first, whether the attorney's conduct was unreasonable and vexatious, and second, whether any excess costs can be attributed to the attorney's unreasonable and vexatious conduct. Because this Court answers the first question in the negative, it need not reach the second.

This case does not warrant sanctions. As noted above, Defendants do not contend that DeBonis possessed a subjective bad intent; instead they pursue the objective bad faith avenue under § 1927.[3] Contrary to Defendants' claims, this case does not warrant sanctions. First and perhaps most importantly, Plaintiffs sought dismissal of this case on their own. Although it does not absolve DeBonis in this case, the motion to dismiss is significant for two reasons: (1) it

---

[3]Defendants also slip in the assertion that DeBonis filed the Complaint in violation of Federal Rule of Civil Procedure 11. (*See* Sanctions Brief at 5-6.) This is a motion under § 1927, not Rule 11. The two are not the same. Yet, for the reasons discussed below, the Court does not find sanctions to be warranted in this case anyway.

14

shows that DeBonis was both aware of his obligation to terminate the suit when it became no longer viable and his willingness to abide by that obligation, and (2) it limits the possible universe of sanctionable conduct to only that which occurred prior to voluntarily moving to dismiss the case – in other words, Defendants must show that the mere act of filing the case, or continuing it until shortly after discovery closed, was itself done in objectively bad faith. Defendants attempt to meet this high burden essentially by claiming that the Plaintiffs could not prove their claim with their own testimony and therefore DeBonis should never have filed the Complaint.  (*See* Sanctions Brief at 5-6.)  Defendants also assert that DeBonis should have had a similar revelation while partaking in discovery.  (*See id*.)

Defendants set too high of a burden in this case.  It is important to remember that the Complaint claimed that the Defendants unlawfully retaliated against the Plaintiffs for their political beliefs.  In such cases, rarely does the defendant give the plaintiff proof that they are taking the complained-of action as a form of political retaliation.  Consequently, discovery is often necessary to develop the proof of the claims.  That guilty defendants do not fess up in their answers to interrogatories or their depositions is not terribly surprising.  Here, where Defendants – apparently honestly – denied liability, it does not seem objectively unreasonable for Plaintiffs to continue discovery and then take some time to sift through the materials before filing a motion to dismiss.  Thus, the Court finds that DeBonis' conduct does not demonstrate recklessness or indifference to the law, *Dal Pozzo*, 463 F.3d at 614; extraordinary or extreme negligence, *Kotsilieris*, 966 F.2d 1181; or that counsel recklessly raised baseless claims despite notice of their frivolous nature or "otherwise show[ed] indifference to statutes, rules, or court orders," *Claiborne*, 414 F.3d at 721.  And certainly, DeBonis' actions were not "so completely without

15

merit as to require the conclusion that they must have been undertaken for some improper purpose." *Fahey*, No. 86 C 5709, 1998 WL 474114, at *4.  Sanctions are simply not warranted here.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendants George Pabey and the City of East Chicago, Indiana's Bill of Costs [DE65] is **GRANTED** and
2. Defendants' Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1927 [DE67] is **DENIED**.

**SO ORDERED**.

ENTERED: October 22, 2007

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT
